

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No. SACV 03-1776 JVS (ANx) Dated: September 30, 2004

Title: Optima Tech Corp. v. Roxio Inc.

DOCKETED ON CM
OCT - 1 2004
BY 024

PRESENT: HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE

Karla J. Tunis
Courtroom Deputy

Not Present
Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS: Not Present

ATTORNEYS PRESENT FOR DEFENDANTS: Not Present

PROCEEDINGS (In Chambers): Order re Markman Hearing and Setting Scheduling Conference

Pursuant to a May 10, 2004 Scheduling Conference, Plaintiff Optima Technology Corporation ("Optima") and Defendant Roxio, Inc. ("Roxio") have submitted to the Court proposed claim constructions regarding certain language contained in Optima's United States Patent Number 5,666,531 ("the '531 Patent") and Roxio's United States Patent Number 6,091,686 ("the '686 Patent"). The relevant claim language[1] is construed by the Court as set forth in Section II, below.

## I. STANDARD

It is well settled that claim construction is "exclusively within the province of the court." Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction "begins and ends" with the claim language itself, Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001), but extrinsic evidence may also be consulted "if needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995). The Court's starting point in determining the meaning of the terms at issue in this Motion therefore is the intrinsic evidence: the claim language, specification, and prosecution history of the relevant patents.

[1] The language "CD Reader," "Recordable CD Drive," "Directory," and "Track Information Map" is contained in the '531 Patent; "Incrementally," "Recording," "Storing," "First Storage Area," and "Second Reserved Storage Area" are found in the '686 Patent. Both the '531 Patent and the '686 Patent use the terms "Track" and "Session."

36

In construing the claim language, the Court begins with a presumption that the words "have the meaning that a person of ordinary skill in the relevant art would ordinarily attribute to them." Novartis Pharms. Corp. v. Abbott Labs., 375 F.3d 1328, 1334 (Fed. Cir. 2004). The presumption may be rebutted, however, if (1) the patentee acts as his own lexicographer, or (2) the claim term is too vague for an accurate meaning to be ascertained from the language used. Id. All that is required for a patentee to act as his own lexicographer is that a different meaning is set out in the specification in a manner sufficient to provide notice of the meaning to a person of ordinary skill in the art. In re Paulsen, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

With these principles in mind, the Court now turns to the construction of the claim language at issue.

## II. DISCUSSION

### A. The '531 Patent

The '531 Patent, entitled "Recordable CDROM Accessing System," claims a technology that enables individuals to transfer data from a computer onto a Compact Disc ("CD"). Specifically, the '531 Patent "relates to a new recording technique that allows a standard recordable CD-ROM drive to appear to, and be accessed by, a user in the same manner as a non-volatile memory such as a hard disk or a floppy disk storage media." ('531 Patent, col. 1, ll. 5-9).

#### 1. "CD Reader" and "Recordable CD Drive"

The terms "CD Reader" and "Recordable CD Drive" appear together in dependent Claims Four and Eight of the '531 Patent. The language of Claims Four and Eight mirror each other and state the following: "The method [system] of claim 1 [claim 5] which further allows a user to repeatedly add and interchange recordable CDs between a CD reader and a recordable CD drive using sessions." ('531 Patent, col. 6, ll. 41-43; '531 Patent, col. 8, ll. 7-9).

Optima urges the Court to construe these terms based on their "plain meaning," which, Optima contends, limits them to drives capable of reading or recording CDs only. Roxio, on the other hand, avers that these terms should be construed more broadly to include all drives that are capable of reading and recording Write-Once-Read-Many (WORM) discs.[2]

---

[2] The acronym "WORM" is used to refer to various storage media that is capable of being written once by a computer that has the appropriate capabilities and then read many times. Although recordable CDs are one type of WORM media, there are many different types of WORM media that are not CDs, including 130 mm magneto-optical drives and 300 mm optical disks. (Expert Report of Dr. Scott Brandt, p. 6.) Indeed, a floppy disc written upon once with the ability to write on the disc permanently disabled might also be a WORM disc.

Each party's proposed claim construction of "CD Reader" and "Recordable CD Drive" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|
| "CD Reader" | A CDROM player capable of reading but not writing CDs. | A disc drive capable of reading Write-Once-Read-Many (WORM) discs. |
| "Recordable CD Drive" | A CD player/recorder capable of both reading and writing CDs. | A disc drive capable of recording Write-Once-Read-Many (WORM) discs. |

To support its constructions, Roxio argues that Optima equates recordable CDs with WORM discs several times within the '531 Patent. For example, Roxio cites to the following statement in the '531 Patent: "Recordable CD can not be directly interfaced with the operating system because they are WORM (Write Once Read Many) devices." (Roxio's Opening Claim Construction Brief, p. 17, citing '531 Patent, col. 1, ll. 12-14). This "equation" of recordable CDs to WORM discs, Roxio argues, leads to the conclusion that the terms at issue should be construed to include all WORM discs and not be limited to CDs.

The Court rejects Roxio's contention that the '531 Patent equates recordable CDs to all WORM discs. As both parties in the instant case are aware, recordable CDs are a type of WORM discs. Optima merely chose to clarify this relationship in the '531 Patent and, by doing so, did not equate one with the other. Thus, the Court finds that the terms "CD Reader" and "Recordable CD Drive" are accorded their ordinary meaning and are limited to drives that are capable of reading and reading and recording CDs only, respectively, not other WORM discs.

The parties also dispute whether the term "CD Reader" is a drive that can only read CDs, or whether it is a drive that is capable of reading CDs but that also can perform other tasks, such as recording CDs. Optima urges the former construction based on the term's "plain meaning." (Pl.'s Opening Markman Brief, p. 10). Roxio, however, argues the latter construction because "any drive that can write CD's can also read them." (Roxio's Opening Claim Construction Brief, p. 17-18, citing Compton Decl., Ex. E, ¶ 15).

The Court finds that the claim language of the '531 Patent compels a construction of "CD Reader" that limits this term to drives that are able only to read CDs. Roxio's argument is logically flawed. Although it may be correct that any drive that is able to write CDs also can read them, it does not follow that the opposite is true. Moreover, the decision by Optima to include the terms "CD Reader" and "Recordable CD Drive" in the '531 Patent

demonstrates its desire to distinguish the two. The ordinary meaning of "CD Reader" is a drive that only reads CDs. The ordinary meaning of "Recordable CD Drive" is a drive that can both read and write CDs.

2. "Directory"

The word "Directory" is used throughout the Claims of the '531 Patent. For example, Claim One recites:

> A method for entering new information on a recordable CDROM operatively connected [to] an operating system of a computer system having an updatable memory comprising:
>
> a) opening a directory in an updatable memory, said directory being identifiable with a directory on a CDROM, said directory in the updatable memory constituting a working directory,
>
> b) storing the data on the CDROM and updating the working directory to reflect the data on the CDROM,
>
> c) upon completion of the data entry, copying the working directory from the updatable memory to the track on the CDROM containing the last entered data, writing a track information map, and closing the track where the data is entered, such that an operating system accessing data stored on the CDROM is routed by the working directory directly to the latest revision of such data on the CDROM, any previous versions of said data which are still present on the CDROM being transparent to the operating system.

Each party's proposed claim construction of "Directory" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|
| "Directory" | A set of records containing the locations of and other information about files and other directories. | A data structure that contains the location and operating system information for each of the current files on the disc. |

Roxio's proposed construction of "Directory" is derived from the "Definitions" section of the '531 Patent, which states the following:

> The Recording Technique ends each track with two special data structures; a directory and a track info map. The directory on any given track occupies one or more packets and contains the cumulative location of all files and operating system information for the disc up to and including the track

('531 Patent, col. 3, ll. 16-21).

Optima, however, argues that this language should be ignored because the term "Directory" is well understood and "has been used for decades." (Pl.'s Opening Markman Brief, p. 11.) Rather, Optima contends, the term should be given its ordinary meaning. (Id. at p. 12.)

The Court rejects Optima's proposed construction because it finds that Optima acted as its own lexicographer when it included a definition of "Directory" in the '531 Patent.[3] The Court believes that the inclusion of the quoted language above, particularly in a section of the '531 Patent labeled "Definitions," is sufficient to provide notice of the term's intended meaning to an individual of skill in the art.[4] See In Re Paulsen, 30 F. 3d at 1480. At the hearing for the instant motion, however, Optima urged the Court to consider the following language, which immediately precedes the "Definitions" section:

> The new recording technique embodying features of the invention . . . uses existing recordable CD elements in a unique way. These elements are defined in detail in various standards documentation addressing recordable CD, the primary standard referred to by the industry as the Orange Book. The definitions of several elements are summarized below and the method of using these elements in the invention are set forth.

('531 Patent, col. 2, ll. 49-57) (emphasis added.) Optima contends that this language disclaims any definition found in the next section of the patent.

The Court rejects Optima's argument. It may be true that some of the terms found in the "Definitions" section of the '531 Patent are defined in detail elsewhere; however, the very reason that inventors are permitted to act as lexicographers in the patent context is because the public may not be familiar with particular technical terms used, or there may not be a singular meaning for the concept that is claimed. Renishaw PLC v. Marposs Societa' Per

---

[3] Optima urges throughout its papers submitted to the Court that, when engaging in claim construction, it is improper to refer to the patent specification for a definition without first considering the term's ordinary meaning. See, e.g., Pl.'s Reply to Roxio's Markman Brief, p. 2. This proposed analysis is unsupported by case law, which clearly indicates that the ordinary meaning of a term will be modified if the patentee acts as its own lexicographer. Nystrom v. Trex Co., Inc., 374 F.3d 1105, 1111 (Fed. Cir. 2004) ("The ordinary and customary definition will be overcome if the patentee has acted as his or her own lexicographer in explicitly setting forth a definition of a claim term distinct from its ordinary meaning . . . ."); K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1363 (Fed. Cir. 1999).

[4] This conclusion is bolstered further by noting that the word "definition" itself is defined as "The act or process of stating a precise meaning or significance; formulation of a meaning." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed) (emphasis added.)

Aziz, 158 F.3d 1243, 1249 (Fed. Cir. 1998). Therefore, the Court finds, notwithstanding the precedent language, that Optima acted as a lexicographer by including the "Definitions" section of the '531 Patent. In so doing, Optima provided notice to the public of the meaning of terms contained therein and clarified any ambiguities in definitions that may be found elsewhere.

The Court also rejects Roxio's proposed construction as inconsistent with the definition of "Directory" provided in the '531 Patent. The Court agrees with Optima that Roxio's proposed construction is too narrow because it is limited to tracking only files on the CD and does not include files that may be subsequently written onto the CD from a working directory, as described in Claims 1, 2, 5, and 6. (Pl.'s Opening Markman Brief, p. 12.)

Therefore, the Court rejects both parties' proposed constructions and finds that, since Optima acted as its own lexicographer, the language included in the '531 Patent and quoted above controls. See Voice Techs. Group v. VMC Sys., 164 F.3d 605, 613-14 (Fed. Cir. 1999) ("When the meaning of a term as used in a patent is clear, that is the meaning that must be applied in the construction of the claim . . . .").[5]

3. "Track Information Map"

The term "Track Information Map" is used by Optima in Claims One and Five of the '531 Patent. The relevant portions of these claims are substantially identical to section "c" of Claim One, reproduced above.[6]

Each party's proposed claim construction of "Track Information Map" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|

[5]The Court notes that the parties stipulated to the Court's construction of the terms "track," "directory," and "session" at the hearing for the instant motion. Pursuant to Local Rule 7-1, this stipulation is binding. C.D.Cal. L.R. 7-1 ("Stipulations will be recognized as binding . . . when made in open court . . . ."). Optima, however, now urges the Court to revisit these constructions. (Optima's Supplemental Brief, pp. 3-6.) Even if the Court disregards the stipulation, which it does not, the result is the same because the Court finds that Optima acted as a lexicographer with respect to these terms.

[6] Whereas Claim One refers to the process after the completion of "data entry," Claim Five refers to the process after the completion of "information entry." Both claims, however, recite that a "track information map" shall be written and closed where the relevant data or information is entered. ('531 Patent, col. 6, ll. 15-64.)

| | | |
|---|---|---|
| "Track Information Map" | A data structure used to locate information stored in tracks on the CD, written upon completion of data entry. | A data structure that includes the start logical block address for the Directory and the start and end logical block addresses of every Track on the disc. |

Optima contends that "Track Information Map" does not need definition because each of the three components–"track," "information," and "map"–are well known to individuals of ordinary skill in the art. (Pl.'s Opening Markman Brief, p. 13.) Therefore, Optima avers, it follows that the term "Track Information Map" also is self-explanatory. Id.

Alternatively, Optima relies on Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323 (Fed. Cir. 2001) to argue that it is improper for the Court to import structural elements into a method claim to define the functional steps. (Optima's Reply to Roxio's Markman Brief, p. 18.) The Court agrees with Roxio, however, that Interactive Gift does not stand for such a proposition. Indeed, that case specifically recognized that a "patentee [may choose] to be his own lexicographer and use terms in a manner other than their ordinary meaning." Interactive Gift, 256 F.3d at 1331. Nothing in Interactive Gift, or any other case cited by Optima, compels the conclusion that, as a rule, it is improper to import structural elements into a method claim to define the functional steps.

The Court thus rejects Optima's proposed construction because the Court finds that Optima acted as its own lexicographer by including a definition of "Track Information Map" in the '531 Patent. Specifically, under a heading labeled "Definitions,"[7] the '531 Patent states:

> The Recording Technique ends each track with two special data structures; a directory and a track info map. . . . The track info map is stored on the last user data blocks on the last packet of the track. The track info map contains the start logical block address of the directory, and the start and end logical block address of every track. The track info map only needs one user data block to store the information for 99 tracks.

('531 Patent, col. 3, ll. 16-26). The Court finds that this language is sufficient to put an individual of skill in the art on notice of the term's meaning. In re Paulsen, 30 F.3d at 1480. Accordingly, the Court finds that the meaning of the term "Track Information Map" is clear from the language of the '531 Patent and that the language quoted above controls. See Voice Techs. Group, 164 F.3d at 613-14. The Court notes that while Roxio's proposed construction mirrors the language of the '531 Patent, it is not identical. (Roxio's Opening Claim

---

[7] See note 4, *supra*.

Construction Brief, p. 9). Therefore, the Court rejects Roxio's definition of "Page Information Map," and adopts the patent's definition.

B. The '686 Patent

The '686 Patent, entitled "Compact Disc Recording System and Method," claims a technology similar to that claimed in the '531 Patent. Specifically, the technology claimed in the '686 Patent is "[a]n improved file system and method for incrementally recording data on compact discs . . . ." ('686 Patent, Abstract, p. 053).

1. "Incrementally"

The word "incrementally" is used by Roxio in Claims 1, 4, 17, and 20 of its '686 Patent. The relevant language of Claims One and Seventeen is similar; both claim "A method [system] of incrementally storing data on a compact disc . . . ." ('686 Patent, col. 18, ll 65-66; col. 19, ll. 60-61). Claims Four and Twenty specify that "wherein said at least one packet is recorded in a form compatible with the Orange Book specification for linking packets recorded incrementally." ('686 Patent, col. 19, ll. 28-30; col. 20, ll. 31-34).

Each party's proposed claim construction of "Incrementally" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|
| "Incrementally" | Information written to a CD in one or more distinct writing actions using packets. | In several distinct writing actions (e.g., at different times, or on different recorders). |

The parties' dispute over the term "incrementally" is centered on whether the construction must be limited to a method of recording CDs using "packets" or not. Optima urges that packets necessarily are a part of incremental writing (Pl.'s Opening Markman Brief, p. 15-17); however, Roxio contends that the term should not be so limited. (Roxio's Opening Claim Construction Brief, p. 18-19).

The Court finds that Roxio did not act as its own lexicographer with respect to the term "incrementally." Therefore, the Court begins its analysis with a presumption that the term has its full ordinary or accustomed meaning. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1362-63 (Fed. Cir. 1999); see Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294, 1298 (Fed. Cir. 2003) ("In the absence of an express intent to impart a novel meaning to the claim terms, the words are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art."). When engaged in claim construction analysis, the Court is free to consider extrinsic evidence to educate itself about

the term and relevant technology. Karlin Tech. v. Surgical Dynamics, 177 F.3d 968, 971 (Fed. Cir. 1999).

The ordinary meaning of "incremental" is "the process of increasing in number, size, quantity, or extent." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000). The customary meaning of the term, however, can be found in § 5.2 of the Orange Book,[8] which states:

> Recording the disc in several distinct writing actions (e.g., at different times, on different recorders) is defined as Incremental Writing. In case of Incremental Writing the linking rules must be taken into account.

(ORANGE BOOK § 5.2.)

Thus, it is clear under the Orange Book definition that the linking rules must be taken into account when using Incremental Writing. Therefore, the Court refers to § 5.2.3 of the Orange Book, entitled "Data Linking," which states, among other things, that "[e]ach Data Track must contain minimum one Packet with User Data." ORANGE BOOK § 5.2.3.

The Court finds the ordinary meaning of "incremental" inapposite because it does not address the technical nature of the patents at issue. Rather, the Court finds that the customary meaning of the term, as provided by the Orange Book, is proper. Optima's proposed construction, "Information written to a CD in one or more distinct writing actions using packets," thus comports with the term's customary meaning and is adopted by the Court as the correct construction.[9]

2. "Recording" and "Storing"

Variations of the words "Record" and "Store" appear throughout the '686 Patent. Illustrative examples are:

---

[8] The "Orange Book" is a common reference to a publication entitled "Recordable Compact Disc System," Part II CD-WO, Version 2.0, System Description, January 1994, N.V. Philips and Sony Corp. Optima and Roxio both cite to § 5.2 of the Orange Book to support their proposed claim construction. (Pl. Opening Markman Brief, p. 15-17; Roxio's Opening Claim Construction Brief, p. 18-19.)

[9] The Court notes that both parties have submitted extensive expert reports to aid the Court in construing the terms at issue in this action. These reports were considered but not relied on by the Court in deciding the instant motion because the ordinary or customary definition of the terms at issue were found in dictionaries and other treatises. See Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202-03 (2002) (explaining that dictionaries, encyclopedias, and treatises are more reliable sources of information with respect to the meaning of terms than expert testimony, which is "colored by the motives of the parties" and "inspired by litigation"). The Court acknowledges that experts' views may be helpful; the Court simply did not have to do that level of analysis on the present record.

> "A method of incrementally storing data on a compact disc of the type having a lead-in area, a program area having a plurality of sectors, and a lead out area . . . ."

('686 Patent, col. 18, ll. 65-67.)

> "The method of claim 1 including recording with each selected file link information to the recorded location of at least one other selected file."

('686 Patent, col. 19, ll. 22-24.)

Each party's proposed claim construction of "Recording" and "Storing" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|
| "Recording" | Writing information to the CD. | No construction is needed for this term because this term is plain English. |
| "Storing" | Writing information to the CD or to the updatable memory of a host system. | No construction is needed for this term because this term is plain English. |

The Court agrees with Optima that "Recording" means "writing information to the CD," as that construction is in line with the ordinary meaning of the term and there is nothing in the claim language of the '686 Patent to suggest a contrary interpretation. The Court, however, rejects Optima's proposed construction of "Storing" because the plain English meaning of the word suffices. The word "Store" is defined as follows: "To copy (data) into memory or onto a storage device, such as a hard disk." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000). The Court finds this definition in accord with the language of the '686 Patent[10] and thus adopts it as the proper construction of the term "Store." Moreover, the patent itself makes clear that "Storing" is not limited to a CD (See '686 Patent, Claims 10, 11.)

3. "First Storage Area" and "Second Reserved Storage Area"

---

[10] For example, Claim One of the '686 Patent states, "A method of incrementally storing data on a compact disk . . . ." ('686 Patent, col. 18, l. 65-66 (emphasis added).)

Both terms, "First Storage Area" and "Second Reserved Storage Area," are introduced in Claim One of the '686 Patent and subsequently appear in various other claims. Claim One of the '686 Patent recites:

> A method of incrementally storing data on a compact disc of the type having a lead-in area, a program area having a plurality of sectors, and a lead out area, comprising . . .
> storing in a first storage area information identifying the location of each selected file in said program area; and
> from time to time recording in a second reserved storage area in said program area information identifying the location of each selected file previously recorded in said program area ignoring all corresponding link blocks, run-in blocks and run-out blocks.

('686 Patent, col. 18, l. 65 - col. 19, l. 21).

Each party's proposed claim construction of "First Storage Area" and "Second Reserved Storage Area" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|
| "First Storage Area" | An area of predetermined size preceding the data area for storing information identifying files in a double-linked format. | An area where data is stored. |
| "Second Reserved Storage Area" | The first track of a session identified and reserved in advance for optionally recording file location information in ISO 9660, ECMA 168, or other standard format. | An area where data is stored. |

Optima urges the Court to find the term "Second Reserved Storage Area" indefinite for lack of a proper antecedent basis, or, in the alternative, to construe the term as defined above. (Pl.'s Opening Markman Brief, p. 19). Optima's argument is based on what it labels the "antecedent basis requirement." To support this assertion, Optima cites the following language from section 2173.05(e) of the Manuel of Patent Examining Procedure ("MPEP"):

> Lack of clarity could arise where a claim refers to 'said lever' or 'the lever,'when the claim contains no earlier recitation or reference to a lever and where it would be unclear as to what element the limitation was making reference.

(Pl.'s Opening Markman Brief, p. 19, n. 14.)

The Court finds Optima's reading of MPEP incomplete. Within the same section as the language cited by Optima is a heading labeled "A Claim Term Which Has No Antecedent Basis In the Disclosure Is Not Necessarily Indefinite." Under this heading is the following:

> The mere fact that a term or phrase used in the claim has no antecedent basis in the specification disclosure does not mean, necessarily, that the term or phrase is indefinite. There is no requirement that the words in the claim must match those used in the specification disclosure.

MPEP § 2173.05(e) (8th ed.).

The Court thus finds that the term "Second Reserved Storage Area" is not necessarily indefinite for lack of an antecedent basis. Moreover, the claim language of the '686 Patent is unambiguous with respect to these terms and leaves no reason for the Court to conclude that "Second Reserved Storage Area" should be construed as anything other than a program area to which data occasionally is recorded and that has the same qualities as the "First Storage Area." There is no need to engraft the limiting language that Optima proposes.

C. Language Common to Both the '531 Patent and the '686 Patent

1. "Track"

Both patents at issue in the instant case use the word "track" in similar contexts. For example, Claim One of the '531 Patent states in relevant part:

> upon completion of the data entry, copying the working directory from the updatable memory to the track on the CDROM containing the last entered data, writing a track information map, and closing the track where the data is entered.

('531 Patent, col. 6, ll. 15-19). Similarly, Claim Twelve of the '686 Patent recites, "The method of claim 1 wherein said data area includes a plurality of tracks." ('686

Patent, col. 7, ll. 50-51).

Each party's proposed claim construction of "Track" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|
| "Track" | A sequence of sectors, the sector numbers of which form a contiguous ascending sequence. No sector belongs to more than one track. | A data structure comprising one or more groups of contiguous data blocks. |

The parties agree that the term "Track" is a well-known term in the art of Compact Discs; however, Roxio argues that Optima modified the term's meaning by defining it in the '531 Patent and thus acting as a lexicographer. (Roxio's Opening Claim Construction Brief, p. 15.)

The Court agrees with Roxio and finds that Optima acted as its own lexicographer by defining the term "Track" in the '531 Patent. This finding is compelled by the following language in the "Definitions" section of that patent: "A packet is a grouping of contiguous user data blocks and is the smallest unit of data that can be written to a recordable CD. . . . A track is a grouping of one or more packets." ('531 Patent, col. 3, ll. 2-15.).[11] This definition is sufficient to provide notice of the term's intended meaning to an individual of skill in the art. See In Re Paulsen, 30 F. 3d at 1480. Thus, the Court construes the term "Track," as used in the '531 Patent, to mean a grouping of one or more packets, each of which is comprised of a grouping of contiguous user data blocks.[12]

The term "Track" is used in the '686 Patent as well; however, Roxio did not include a definition of the term and thus did not act as its own lexicographer. Therefore, the Court finds that the customary meaning of the term will be applied to the '686 Patent. Optima's proposed construction is consistent with the customary

---

[11] See note 4, *supra*.

[12] See note 5, *supra*.

definition[13] and thus is accepted by the Court as the proper definition of the term "Track," as used in the '686 Patent.

2. "Session"

Claim Four of the '531 Patent recites, "The method of claim 1 which further allows a user to repeatedly add and interchange recordable CDs between a CD reader and a recordable CD drive using sessions." ('531 Patent, col. 6, ll. 41-43). Similarly, Claim Fifteen of the '686 Patent states, "The method of claim 1 wherein the method is repeated to create multiple sessions on the same compact disc." ('686 Patent, col. 19, ll. 56-57).

Each party's proposed claim construction of "Session" is as follows:

| | *Optima's Proposed Claim Construction* | *Roxio's Proposed Claim Construction* |
|---|---|---|
| "Session" | An area on a recordable compact disc consisting of a Program Area, where user data is recorded, and when finalized (closed), a Lead-In Area and a Lead-Out Area. | A finalized portion of a recordable disc. |

The parties' dispute over the term "Session" is based on whether a session must be finalized or not. The customary meaning of the term "Session," as established in the Orange Book, is "[a]n area on the [compact] disc consisting of a Lead-In area, a Program area and a Lead-Out area." ORANGE BOOK, p. 141. Moreover, the Orange Book makes clear that a session need not be finalized, but can be "if the Lead-in and Lead-out Areas of the Session are recorded." Id at 179. The Court finds that this is the correct construction of the term "Session" as used in the '686 Patent.

Again, however, the Court finds that Optima acted as its own lexicographer and modified the customary definition of "Session" in its '531 Patent. Under the "Definitions" section of that patent, a "Session" is defined

---

13 Optima's proposed construction, "A sequence of sectors, the sector numbers of which form a contiguous ascending sequence. No sector belongs to more than one track," mirrors the language of TC 15 Working paper (1992), a document cited by both parties as an industry standard.

as "A finalized portion of a recordable CD." ('531 Patent, col. 3, l. 41.)[14] The Court finds this definition controlling in the '531 Patent because it, like the other terms defined in the "Definitions" section of the '531 Patent, is sufficient to provide notice of the term's intended meaning to an individual of skill in the art. See In Re Paulsen, 30 F. 3d at 1480.[15]

D. Application of 35 U.S.C. § 112(6)

Whether a claim is in means-plus-function form, pursuant to 35 U.S.C. § 112(6) is a claim construction question. Initially, the Court notes that the use of the term "means" creates a rebuttable presumption that § 112(6) applies. CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1369 (Fed. Cir. 2002). This presumption may be rebutted if the claim "recites sufficiently definite structure to avoid the ambit" of § 112(6). Personalized Media Communs. LLC v. ITC, 161 F.3d 696, 704 (Fed. Cir. 1998).

(i). Claim 17(d)

Claim 17(d) of the '686 Patent recites:

> said compact disc recorder including means to store in a first storage area each time said at least one selected file is recorded in said program area, information identifying the location of said at least one selected file recorded in said program area

('686 Patent, col. 20, ll. 12-16). Roxio urges the Court to find that this claim should not be construed under § 112(6) because it recites adequate structure for performing the stated "storing" function. (Roxio's Opening Claim Construction Brief, p. 21.) Optima, on the other hand, argues that § 112(6) does apply and that the Claim should fail for indefiniteness because there is no corresponding structure, acts or materials in the specification. (Pl.'s Opening Markman Brief, p. 23-24.)

The Court finds that § 112(d) applies to Claim 17(d) of the '686 Patent. Although the claim recites "compact disc recorder" as a structure, the § 112(d) presumption will be overcome only if the structure within the claim itself is able to "perform entirely the recited function." Sage Prods. v. Devon Indus., Inc., 126 F.3d 1420, 1427-28 (Fed. Cir. 1997). Here, the recited function is storing information to a "first storage area." The Court agrees with Optima that an ordinary compact disc recorder is not capable of performing entirely

---

[14] See note 4, *supra*.

[15] See note 5, *supra*.

this function because "first storage area" would mean nothing to the structure without first being programmed properly. Accordingly, the language of Claim 17(d) does not rebut the presumption that § 112(d) applies. The Court rejects Optima's contention that the claim must fail for indefiniteness.

(ii). Claim 17(e)

Claim 17(e) of the '686 Patent states the following:

> said compact disc recorder also including means operable to record from time to time in a second reserved storage area in said program area information identifying the location of each selected file previously recorded in said program area, ignoring all corresponding link blocks, run-in blocks and run-out blocks.

('686 Patent, col. 20, ll. 17-23.) Again, Roxio avers that § 112(e) is inapposite because the claim recites adequate structure for performing the stated "recording" function. Optima, however, argues that claim Claim 17(e) should be subject to § 112(d).

The Court finds that Claim 17(e) of the '686 Patent is subject to § 112(d) because the structure recited in the Claim is insufficient to overcome the presumption that § 112(d) applies. As explained above, an ordinary "compact disc recorder" is incapable of recording to a "second reserved storage area" without proper programming. It follows that the structure in Claim 17(e) cannot perform entirely the recited function. Sage Prods., 126 F.3d at 1427-28. Thus, the presumption that § 112(d) applies cannot be overcome.

III. CONCLUSION

The Court finds that Claims 17(d) and 17(e) of the '686 Patent are subject to § 112(d). Further, the terms of the '531 Patent and '686 Patent are construed by the Court as follows:

| **'531 Patent** | |
|---|---|
| **TERM** | **CONSTRUCTION** |
| "CD Reader" | A CDROM player capable of reading but not writing CDs. |
| "Recordable CD Drive" | A CD player/recorder capable of both reading and writing CDs. |

| | |
|---|---|
| "Directory" | A data structure that occupies one or more packets and contains the cumulative location of all files and operating system information for the disc, up to and including the track on which it resides. |
| "Track Information Map" | A data structure that is stored on the last user data blocks on the last packet of the track. It contains the start logical block address of the directory, and the start and end logical block address of every track. |

| '686 Patent | |
|---|---|
| **TERM** | **CONSTRUCTION** |
| "Incrementally" | Information written to a CD in one or more distinct writing actions using packets. |
| "Recording" | Writing information to the CD. |
| "Storing" | Copying data into memory or onto a storage device, such as a hard disk. |
| "First Storage Area" | An area where data is stored. |
| "Second Reserved Storage Area" | An area where data is stored. |

| **COMMON TERMS** | | |
|---|---|---|
| TERM | '531 PATENT | '686 PATENT |
| "Track" | A grouping of one or more packets, each of which is comprised of a grouping of contiguous user data blocks. | A sequence of sectors, the sector numbers of which form a contiguous ascending sequence. No sector belongs to more than one track. |
| "Session" | A finalized portion of a recordable CD. | An area on the CD consisting of a Lead-In area, a Program area, and a Lead-Out area. A session may, but need not, be finalized. |

IV. SCHEDULING CONFERENCE

The Court hereby sets the Scheduling Conference in this action for November 15, 2004 at 11:30 a.m. Counsel shall file a joint report not later than November 8, 2004 setting forth their proposals for case management dates.